IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT ALBANO, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Case No. 2:14-CV-0379 |
| v. | : | |
| | : | JUDGE ALGENON L. MARBLEY |
| COLUMBUS BOARD OF | : | |
| EDUCATION., *et al.*, | : | Magistrate Judge Kemp |
| | : | |
| Defendants. | : | |

## OPINION & ORDER

This matter comes before this Court on three, separate Motions for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure ("FRCP") 12(c): The first Motion is filed by Defendants Columbus City School District ("CCSD"), Columbus Board of Education ("CBE"), Gene Harris, David Mangas, and Michael Dodds ("School Defendants"), (Doc. 21); the second Motion is filed by Defendants Columbus Education Association ("CEA"), Tracey Johnson, and Rhonda Johnson ("Union Defendants"), (Doc. 22); and, the third Motion is filed by Defendants Sue Salamido and Cloppert, Latanick, Sauter & Washburn ("Attorney Defendants"). (Doc. 27). For the reasons set forth herein, all three Motions for Judgment on the Pleadings are **GRANTED**, and this action is hereby **DISMISSED**.

### I.  BACKGROUND

#### *A. Factual Background*

Viewing the facts in the light most favorable to the Plaintiff, and taking all facts as true for the purposes of the current motions, Plaintiff states in his Complaint that the facts of this case are as follows. Plaintiff is a retired Boston Police Department officer who left the Department

1

after thirty-six years to go back to school to become an educator with a focus on law enforcement. (Complaint, Doc. 6, at ¶¶ 14-16). After completing the requisite schooling, he was hired in August 2010 to teach law enforcement at the Columbus Downtown High School, which is part of the CCSD. Id. at ¶¶ 1, 20. The principal of the School was David Mangas.

As a public school teacher employed by the CCSD, Plaintiff was also a member of the CEA, which is the union representing educators in the Columbus Public School District. *Id*. at ¶ 4. At all relevant times, the president of CEA was Rhonda Johnson, and Plaintiff's union representative was Tracey Johnson. *Id*. at ¶¶ 5-6.

During the first few months of his employment, Plaintiff observed discrepancies between his own attendance and grading records, and the "official" records. *Id*. at ¶¶ 26-31. Plaintiff brought these discrepancies to the attention of the school administration, but he was told to ignore them. *Id*. at ¶ 32. He also observed that students who received "F" grades were subsequently passed, and that students were given attendance forms directly; he was told that if the forms came back signed, the unexcused absences would be erased. *Id*. at ¶ 33-34.

In March of 2011, upon the advice of other teachers, Plaintiff implemented an "award system to reinforce positive behavior and deal with classroom management." *Id*. ¶ 36. In April 2011, two students that Plaintiff had sent to the principal's office "concocted allegations of inappropriate behavior" against him, involving "another student and alleged to have happened eight months earlier." *Id*. at ¶¶ 37-38. Plaintiff was removed from the school pending an investigation. *Id*. at ¶ 38. Plaintiff's union, CEA, retained Attorney Salamido to represent him. *Id.* at ¶ 39. Attorney Salamido was at all relevant times employed by Cloppert, Latanick, Sauter & Washburn. *Id*. at ¶ 10. CCS and Children's Services conducted an investigation and found the allegations to be unsubstantiated. Id. at ¶ 40. Nonetheless, the school presented Plaintiff with a

2

Last Chance Agreement "premised on the award system" his associates had recommended to him. *Id*. at ¶ 41. He signed the agreement in May 2011 upon the advice of Attorney Salamido, and Tracey Johnson, neither of whom contested the allegations against him or requested an administrative hearing on his behalf. *Id*. at ¶ 42.

 Mr. Albano completed the 2010-2011 school year, and returned for the 2011-2012 school year. Upon his return, he observed that many students who had failed the prior year had been promoted, and in October, he once again observed discrepancies between his attendance records and official attendance records, as well as students being given a form through which to obtain retroactive forgiveness of unexcused absences. *Id*. ¶¶ 43-46. Plaintiff inquired to Principal Mangas about the use of this form, and Mangas "informed Mr. Albano in an aggressive and intimidating manner that the forms and the attendance proscribed procedures were none of Mr. Albano's business." *Id*. at ¶ 47.

 From October 2011 through March 2012 Mr. Albano's vehicle was vandalized in the school parking lot, and a student made repeated bigoted remarks disparaging his sexual orientation. *Id*. at ¶ 49-52. Mr. Albano reported the student to Mr. Mangas, and filed an incident report upon the advice of Tracey Johnson, but Principal Mangas "willfully and maliciously ignored" the issue. *Id*. at ¶ 52.

 In March 2012, two students were pulled from Mr. Albano's class and called to Mr. Manga's office because they were overheard "conspiring to fabricate reports about Mr. Albano 'demeaning' them." *Id*. at ¶ 54. The next day, Mr. Mangas informed Mr. Albano that he was being referred for a hearing on demeaning students and insubordination. *Id*. at ¶ 56. In March or April of 2012, Mr. Albano, Tracey Johnson and CCS Regional Director Mike Dodds met with Principal Mangas to discuss allegations about the attendance issues and unrelated issues

3

concerning student progress. *Id*. at ¶ 57. At the meeting, Mr. Mangas gave Mr. Albano a letter informing him of a hearing. *Id*. Later, reports indicated that Mr. Dodds had been personally involved in scrubbing absent marks from CCS records. Id. at ¶ 58.

In April of 2012, Mr. Albano was diagnosed with skin cancer. Id. at ¶ 59. Also in April, Mr. Mangas removed Mr. Albano from school because he allegedly told students his sister lived in Florida and he offered to take the students and their families to Boston, neither of which was true. *Id*. at ¶ 60. Then, Mr. Albano was forced to take FMLA leave due to medical issues caused by the harassment and retaliation he was experiencing. *Id*. at ¶ 61.

In April Mr. Albano attended the hearing, which was not focused on allegations of insubordination or demeaning students, but instead on the more recent allegations that he violated the Last Chance Agreement allegedly by sharing with the class his sister's state of domicile, and offering a free trip to Boston. *Id*. at ¶ 62. He did not receive notice that the hearing would be held on the more recent allegations. *Id*.

In May he had clearance to return to work from FMLA leave, but CBE and CCS informed him that his FMLA leave would be continued. Id. at ¶ 63. Salamido and Tracey Johnson did not offer Mr. Albano guidance or take any action concerning the extension of his FMLA leave. *Id*.

In June 2012, Mr. Albano asked Tracey Johnson if she had received information concerning the findings of the hearing officer, and Johnson told him "to be careful what he wished for." *Id*. at ¶ 64. Ms. Salamido then contacted CCS and was told that Mr. Albano had the option either to resign effective at the end of the 2012-2013 academic year or be terminated immediately. *Id*. He was informed that if he refused to resign, his accrued vacation time and benefits, including medical, would cease immediately. *Id*. Attorney Salamido advised Mr.

4

Albano to "accept the 'deal' and resign at the end of the 2012-2013 school year. *Id*. at ¶ 65. She also failed to advise him of his options or of his rights to due process under the law and the collective bargaining agreement. *Id*.

In August of 2012, Mr. Albano signed a resignation dated May 31, 2013. *Id*. at ¶ 67. When he signed the resignation, he was "promised that he would keep his health benefits and be allowed to work out the 2012-2013 school year in peace, free from the bullying antics of Mr. Mangas and his CCS/CBE cronies." *Id*.

Mr. Albano makes numerous allegations of harassment that ensued upon the commencement of the new school year, including: negative performance reviews in which Mr. Mangas forged Mr. Albano's signature; confiscation of his teaching materials for the special program he ran; defunding the program he ran; and Mr. Manga entering and interrupting Mr. Albano's classroom for no purpose. *Id.* at ¶¶ 68-75. In September of 2012, Mr. Albano attempted to rescind his prior resignation because of Mr. Mangas' horrible behavior and intolerable work conditions, but nothing came of this attempt. *Id.* at ¶ 76.

In October 2012, Mr. Albano filed a grievance against Mr. Mangas upon the recommendation of Tracey Johnson. *Id*. at ¶ 77. Following the hearing, and in retaliation for reporting his behavior and grade and attendance manipulation, Mr. Albano was reassigned to the "warehouse." *Id*. at ¶ 79. After Mr. Albano refused to consent to the reassignment, he was reassigned to a job, which he began November 2012, doing clerical, administrative and custodial duties, in exchange for agreeing to "stay quiet and not contact the news, teachers, or students." *Id*. at ¶ 80-83. Mr. Albano's pay and benefits ceased on October 1, 2013.

5

*B. Procedural Background*

Plaintiff originally filed the Complaint in the Franklin County Court of Common Pleas, and on April 25, 2014, the Defendants removed the case to Federal Court. The Complaint makes the following claims based on the above facts: Constructive Discharge (Count I); Fraud in the Inducement (Count II); Age Discrimination-O.R.C. § 4112.02(Count III); Deprivation of Due Process Rights—42 U.S.C. § 1983 (Count IV); Whistleblower Statute Violations—O.R.C. § 4113.52 (Count V); Civil Conspiracy (Count VI); Respondeat Superior (Count VII); Negligent Training, Supervision, and Retention (Count VIII); Intentional Infliction of Emotional Distress (Count IX); Legal Malpractice (Count X); and, Punitive Damages (Count XI).

On July 3, 2014, the School Defendants filed their Motion for Judgment on the Pleadings, (Doc. 21); on July 18, 2014 the Union Defendants filed their Motion for Judgment on the Pleadings, (Doc. 22); and, on August 27, 2014, the Attorney Defendants filed their Motion for Judgment on the Pleadings. (Doc. 27). All three matters have been fully briefed and are ripe for review.

## II. STANDARD

A motion for judgment on the pleadings may be made "[a]fter the pleadings are closed but within such time as not to delay the trial." Fed.R.Civ.P. 12(c). A motion for judgment on the pleadings under Rule 12(c) attacks the sufficiency of the pleadings and is reviewed under the same standard applicable to a motion to dismiss under Rule 12(b)(6). *Ziegler v. IBP Hog Mkt.,* 249 F.3d 509, 511–12 (6th Cir.2001); *E.E.O.C. v. J.H. Routh Packing Co.,* 246 F.3d 850, 851 (6th Cir.2001). "A motion to dismiss for failure to state a claim is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus,* 404 F.3d 950, 958–59 (6th Cir.2005).

Under Rule 12(b)(6), and thus 12(c), the Court must construe the complaint in the light most favorable to the nonmoving party, accept all factual allegations as true, and make reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield,* 552 F.3d 430, 434 (6th Cir.2008); *Murphy v. Sofamor Danek Gp., Inc.,* 123 F.3d 394, 400 (6th Cir.1997). The Court is not required, however, to accept as true mere legal conclusions unsupported by factual allegations. *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (*citing Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Although liberal, the Rule 12(b)(6) standard requires more than the bare assertion of legal conclusions to survive a motion to dismiss. *Allard v. Weitzman,* 991 F.2d 1236, 1240 (6th Cir.1993) (citation omitted). While a complaint need not contain "detailed factual allegations," its "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 544, 127 S.Ct. at 1964. A complaint that suggests "the mere possibility of misconduct" is insufficient; rather, the complaint must state "a plausible claim for relief." *Iqbal,* 129 S.Ct. at 1950 (*citing Twombly,* 550 U.S at 556, 127 S.Ct. 1955).

Thus, a complaint will be dismissed pursuant to Rule 12(c) only if there is no law to support the claims made, or if the facts alleged are insufficient to state a claim, or if on the face of the complaint there is an insurmountable bar to relief. *See Rauch v. Day & Night Mfg. Corp.,* 576 F.2d 697, 702 (6th Cir.1978); *Westlake v. Lucas,* 537 F.2d 857, 858 (6th Cir.1976); *Cmty. Mental Health Serv. V. Mental Health & Recovery Bd.,* 395 F.Supp.2d 644, 649 (S.D.Ohio 2004).

### III.    ANALYSIS

### A.  Deprivation of Due Process Rights—42 U.S.C. § 1983 (Count IV)

In his Complaint, Plaintiff claims that he had a property interest in continued employment as a state employee, that he could not be deprived of such an interest without the due process of law, and that "Defendants, acting under color of state law, did deprive Mr. Albano of his right to due process by forcing his resignation and/or unlawfully terminating his employment without providing him with a pre or post deprivation hearing before suspending him from employment without pay." (Doc. 6, at ¶¶ 111-13). Further, he alleges that "Defendants forced Mr. Albano's resignation, thereby constructively discharging him from employment, or in the alternative actually terminated him specifically because they were acutely aware that he was entitled to a pre or post deprivation hearing pursuant to Ohio law." *Id*. at ¶ 114.

School Defendants urge this Court to follow the rationale in two analogous cases—*Rhoads v. Bd. of Educ. of Mad River Local Sch. Dist.*, 103 F. App'x 888 (6th Cir. 2004), and *Brown v. Columbus Bd. of Educ.*, 638 F. Supp. 2d 856 (S.D. Ohio 2009)—and grant them judgment on the pleadings on Plaintiff's § 1983 Due Process claim because Plaintiff resigned voluntarily, and thus Plaintiff cannot show that he was deprived of his property interest in his employment without due process.

As explained in *Rhoads*, "[t]o succeed on a procedural due process claim under § 1983, a plaintiff must show that she possessed a property interest protected by the due process clause of the Fourteenth Amendment and that she was deprived of this interest by the defendant without being afforded sufficient process." 103 F. App'x at 894 (citing *Hahn v. Star Bank,* 190 F.3d 708, 716 (6th Cir.1999)). As a state-employed public school teacher, Mr. Albano "possessed a property interest in his continued employment because Ohio law provides for dismissal or

suspension only upon certain showings. *See* Ohio Rev.Code § 124.11." *Brown,* 638 F. Supp. 2d at 863. A public employee with a property interest in continued employment, such as Mr. Albano, is deprived of that interest by his employer if the employer constructively discharges him by forcing him to resign involuntarily. *Rhoads*, 103 F. App'x at 894 (citing *Parker v. Bd. of Regents,* 981 F.2d 1159, 1162 (10th Cir.1992); *accord Leheny v. City of Pittsburgh,* 183 F.3d 220, 227–28 (3d Cir.1999); *Hargray v. City of Hallandale,* 57 F.3d 1560, 1567–69 (11th Cir.1995); *Angarita v. St. Louis County,* 981 F.2d 1537, 1544 (8th Cir.1992); *Stone v. Univ. of Md. Med. Sys. Corp.,* 855 F.2d 167, 173 (4th Cir.1988)). If this Court determines that Mr. Albano resigned of his own free will, however, "even as a result of the defendant's actions," then this Court must find that Mr. Albano voluntarily relinquished his property interest in continued employment—meaning he was not constructively discharged—"and the defendant cannot be found to have deprived [him] of that interest without due process of law." *Id.*

Generally, employee resignations are presumed to be voluntary. *Id*. at 895 (citing *Leheny,* 183 F.3d at 227). An employee may rebut this presumption by producing evidence indicating that the resignation was involuntarily procured. *Id.* There are two circumstances in which an employee's resignation will be deemed involuntary for due process purposes: "(1) when the employer forces the resignation or retirement by coercion or duress, or (2) when the employer obtains the resignation or retirement by deceiving or misrepresenting a material fact to the employee." *Leheny*, 183 F.3d at 228 (citing *Hargray,* 57 F.3d at 1568).

When assessing whether a resignation was obtained by coercion or duress, the inquiry is whether an objectively reasonable person would, under the totality of the circumstances, feel compelled to resign if he were in the employee's position. *Rhoads*, 103 F. App'x at 895 (citing *Yearous,* 128 F.3d at 1356). Relevant to this inquiry are several non-dispositive factors,

including: (1) whether the employee was given an alternative to resignation, (2) whether the employee understood the nature of the choice [she] was given, (3) whether the employee was given a reasonable time in which to choose, and (4) whether the employee could select the effective date of resignation." *Id*. (citing *Lenz v. Dewey,* 64 F.3d 547, 552 (10th Cir.1995)). Whether the employee had the advice of counsel is also a factor considered by other Circuits when assessing whether an employee resigned voluntarily. *See Hargray*, 57 F.3d at 1568 (citing *Stone,* 855 F.2d at 174, 177. *See also Angarita,* 981 F.2d at 1544; *Parker,* 981 F.2d at 1162; *Schultz,* 810 F.2d at 1136; *Scharf,* 710 F.2d at 1574).

> The mere fact that an employee is forced to choose between resignation and termination does not alone establish that a subsequent choice to resign is involuntary, provided that the employer had good cause to believe there were grounds for termination. On the other hand, an employee resigns involuntarily if, after being given a choice between resignation and termination, she is not granted sufficient time and opportunity to deliberate about the choice.

*Brown*, 638 F. Supp. 2d 856, 863-66 (S.D. Ohio 2009) (citing *Rhoads,* 103 Fed.Appx. at 895 (internal citations omitted). *See also Harris v. Butler County, Ohio,* No. 1:07CV069, 2008 WL 4186316, *7, 2008 U.S. Dist. LEXIS 86385, at *19 (S.D.Ohio Sept. 3, 2008) (relying upon same voluntary resignation tests)).

In *Rhoads* and *Brown*, the Courts applied the above test and found that in light of the presumption that resignations are voluntary, a reasonable jury could not conclude in either case that a reasonable person would feel coerced into resignation. In *Rhoads*, the Court determined that although Plaintiff, a school bus driver, was only given a choice between resignation and termination after testing positive for marijuana, the results of her drug test gave her employer good cause to believe that she was subject to termination. 103 F. App'x at 895. Further, the Court found that seven hours was a "[r]easonable amount of time to deliberate meaningfully about the choice, the ramifications of which she clearly understood." *Id*. The Court also found

10

determinative that Plaintiff requested the opportunity to resign, rather than be terminated. *Id*. In *Brown*, the Court found that the facts were even more compelling to find no due process violation because all four factors had been met. In *Brown*, the Plaintiff, a public school teacher, had good reason to believe he would be subject to termination pursuant to Ohio Rev.Code § 3319.39 for an assault conviction. 638 F. Supp. 2d at 864. Further, the Court found he understood the nature of his choice because he discussed the choices with his union representatives, and with a fellow teacher. *Id*. Also, the Court found that approximately twenty-four hours was a reasonable amount of time to choose between termination and resignation. *Id*. The Court was also persuaded by the fact that Plaintiff did not request to withdraw his resignation at any time before the Board accepted it, that he selected the effective date of his resignation, and that when the resignation was accepted three days before the selected date, Plaintiff was given the opportunity to file a grievance related to the resignation and its effectiveness. *Id*.

Defendant urges this Court to find that Mr. Albano's resignation was voluntary because he had at least two months to consider the option between immediate termination and resignation at the end of the 2012-2013 school-year. The Complaint states that Mr. Albano was first offered the "deal" in June 2012 after his hearing, and he did not sign a resignation until August 2012. In contrast, in *Rhoads* and *Brown*, the Court found that merely seven hours and twenty-four hours, respectively, were reasonable amounts of time to choose between termination and resignation. Further, Defendant urges this Court to consider that Plaintiff understood the nature of his choice because he concedes he had the opportunity to discuss his decision with counsel, and that Mr. Albano was permitted to choose the date of his resignation to be the end of the 2012-2013 school-year.

11

The Complaint shows that Mr. Albano was subject to multiple hearings, including for allegations of inappropriate and demeaning behavior toward students, but Plaintiff denies all allegations. Plaintiff argues, instead, that such allegations were a pretext for firing him due to his continued complaints about the "scrubbing" of students' grades and attendance records.

Despite the fact that unlike in *Brown* and *Rhoads*, the Plaintiff in this case does not concede culpability for the misconduct that allegedly led to his resignation, this Court cannot find that the Complaint contains sufficient facts showing that his resignation was procured under conditions of coercion or duress, or through deception. First, considering that Plaintiff's own attorney advised Plaintiff to accept the "deal" and resign, that he had two months to consider his decision, and that he agreed to his resignation date, it cannot be said that he was coerced into resigning involuntarily. These facts are not in line with cases in which Plaintiffs have overcome the presumption that a resignation was voluntary, such as case where the Plaintiff was subject to time pressure, isolation, or denial of requests to speak with counsel or representatives. *See, e.g.*, *Parrish v. City of Wilmington*, 3 F.Supp.3d 688 (S.D. Ohio, 2014) (finding constructive discharge where employer did not advise employee of his rights; cornered him with the possibility of losing unemployment benefits; told him they needed an answer for that evening's meeting; and plaintiff did not sign the resignation letter or choose the date of resignation); *see also Paroczay v. Hodges,* 297 F.2d 439 (D.C.Cir.1961) (finding resignation involuntary where the employee was told he had to sign a resignation letter before he left the supervisor's room, or charges would be filed immediately, despite his repeated requests to have more time and to consult an attorney); *Angarita v. St. Louis County,* 981 F.2d 1537 (8th Cir.1992) (finding resignation involuntary where employees were: not permitted to leave the interrogation room without first signing a resignation form; not presented with a specific complaint of their actions;

12

denied requests to speak with their supervisors or have them present; threatened with disclosure of the allegations to their family; threatened with publicity in the media; and were not told the source of the allegations, among other things).

Second, while Plaintiff argues in his Complaint that he was denied due process of law because his attorney, Salamido, failed to advise him of his options or of his rights to due process under both the law and the Collective Bargaining Agreement, this does not support a finding that his employer constructively discharged him in violation of his due process rights. Although Mr. Albano was a relatively new public employee, and arguably was less knowledgeable about the procedure due to him had he decided to be terminated instead of resigning, he had two months' time to review his collective bargaining agreement, and to consult with people besides Salamido, such as with other teachers or a different attorney. *See Parker*, 981 F.2d at 1162 (finding employee resigned voluntarily who had a week to decide, during which time she could have consulted an attorney, but chose not to do so); *see also Stone*, 855 F.2d at 177 (finding resignation voluntary where employee knew what his rights were, "and if he did not, he was given ample time to find out"). Moreover, the Complaint shows some negotiation went into Mr. Albano's decision to resign, including the promise to retain his health benefits, and to work out the 2012-2013 school year in peace from the "bullying antics" of the administration. This type of negotiation tilts in favor of a finding of voluntariness because it shows Mr. Albano deliberated about his choice and weighed his options.

In addition, although Mr. Albano was certainly in a precarious and undesirable situation considering his recent cancer diagnosis, an allegation of coercion or duress cannot stand simply because he was at risk of losing a benefit of employment that any employee would lose upon termination. *C.f., Parrish*, 3 F.Supp.3d 688, 692-95 (S.D. Ohio, 2014) (finding involuntary

discharge where state employee was threatened with the possibility of losing unemployment benefits if he did not resign by that evening).

Further, this Court finds that insofar as Plaintiff's due process claim is premised on his attorney's failure to advise him of his right to a pre and post termination hearing, such an accusation may be the grounds for a claim against his attorney, but does not weigh in favor of this Court finding that his decision to resign constituted a due process violation by his employer. In *Parrish*, a Southern District of Ohio case, the Court found a due process violation where a state employer did not advise an employee of his due process rights when it forced a resignation upon him, and the employee did not have the benefit of counsel. 3 F.Supp.3d 688, 694. In the case *sub judice*, in contrast, this Court infers from the Complaint that Plaintiff's employer was aware that Mr. Albano had counsel because it was Attorney Salamido who contacted the school and received the offer that Mr. Albano could either resign at the end of the 2012-2013 school year or be terminated immediately. The Court also infers that the School Defendants were aware that Salamido was appointed by the Union to represent him. Accordingly, in contrast to *Parrish*, where the Plaintiff had no attorney or representative to advise him of his rights, the Court does not find that it was coercive in the this case for the School Defendants not to advise Mr. Albano of his right to a pre and post termination hearing had he chosen to be terminated immediately, rather than to resign in a year. In sum, the facts do not show that Mr. Albano was coerced into resignation.

Neither do the facts show Mr. Albano was induced to resign based on deception or misrepresentation. This Court notes that Mr. Albano also brings a civil-tort fraud in the inducement claim, partially premised on the fact that he conditioned his resignation on the administration's promise that he would be free of their harassment, but then he was harassed

14

through his final year. These facts, however, are not sufficient to show his resignation was procured through misrepresentation of a material fact. A promise to behave in a certain way in the future, which is later broken, is not the same a inducing a resignation through a material misrepresentations.

Plaintiff also argues that his Union Representatives, including Attorney Salamido, are implicated in his due process claim because they conspired, along with School Plaintiffs, to deprive Mr. Albano of his due process rights. As evidence that Union Representatives and Salamido were conspiring along with School Defendants to deprive Plaintiff of his procedural due process rights, Plaintiff alleges in his Complaint that his Union Representative, Tracey Johnson, told Plaintiff to "be careful what he wished for" when he inquired about the continuation of his FMLA leave. Also, Tracey Johnson and the CEA allegedly neglected to advise Plaintiff of his rights to certain procedures on several occasions to his detriment and in support of the state actors as alleged.

Labor unions generally are not state actors for the purposes of a § 1983 claim. *Murray v. City of Columbus*, No. 2:10-CV-797, 2012 WL 4475718, at *10 (S.D. Ohio Sept. 26, 2012) (Marbley, J) (citing *Johnson v. Intern. Bhd. of Teamsters (Local 830),* 256 F. App'x 481, 483 (3d. Cir.2007)); *Ciambriello v. Cnty. of Nassau,* 292 F.3d 307, 323–24 (2d. Cir.2002)). Claims of conspiracies between private and state actors, however, if adequately alleged, generally suffice to establish state action on the part of the private actor for purposes of deciding a motion to dismiss. *Id*. at *10 (citing *Revis v. Meldrum,* 489 F.3d 273, 292 (6th Cir.2007)). A claim of civil conspiracy to deprive one of his constitutional rights is sufficiently pled in a complaint that alleges: (1) a single plan existed; (2) that the conspirators shared in the general conspiratorial

15

objective; and, (3) and that an over act was committed. *Memphis, Tennessee Area Local, Am. Postal Workers Union, AFL-CIO v. City of Memphis*, 361 F.3d 898, 905 (6th Cir. 2004).

This Court finds that Mr. Albano's pleadings fail to put forth facts showing it was plausible that a conspiracy existed between the Union Defendants, Attorney Salamido and School Defendants to deprive Mr. Albano of his right to a pre and post termination hearing by constructively discharging him and/or colluding to support his constructive discharge. *Iqbal*, 556 U.S. at 678, (quoting *Twombly*, 550 U.S. at 570 ("a complaint must contain sufficient factual matter… to 'state a claim to relief that is plausible on its face.'"). First, the Complaint does not allege how the School Defendants, Union Defendants, and Attorney Salamido conspired together to deprive Mr. Albano of due process. *Murray*, 2012 WL 4475718, at *10 (finding civil conspiracy under § 1983 was not adequately pled because the Court was left to guess how the city and the union representing the plaintiff conspired together). Except for an allegation of one off-handed comment by a union representative, and the inference that Union Representatives conspired with School Defendants simply because they failed fully to apprise Mr. Albano of his rights or adequately represent him in certain circumstances, the Complaint does not suggest that a single plan existed.

Second, the Complaint does not contain plausible facts as to why the Union Defendants would want to deprive Mr. Albano of his due process rights in concert with the School Defendants. Although Plaintiff alleges they combined efforts to prevent public disclosure of grade and attendance scrubbing activity, the Plaintiff does not allege why the Union would be motivated to participate in such a cover up. Finally, this Court finds allegations of conspiracy between the School Defendants and the Union Defendants particularly unpersuasive because the two entities were in an adversarial relationship. In *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307,

323-24 (2d Cir. 2002), the Court found that Plaintiff failed to allege a conspiracy under § 1983 between a county defendant and a union defendant where the very proceeding in which the plaintiff alleged the two entities conspired to deprive him of his due process rights was a grievance proceeding in which the county and union were in adversarial positions. This Court adopts the rationale in *Ciambriello*, and finds Plaintiff did not adequately plead facts showing a civil conspiracy was plausible between these two adversarial entities.

Accordingly, Attorney Salamido's or the Union Representatives' failures to apprise Mr. Albano of his right to a pre or post deprivation hearing—should he have decided to be terminated rather than to resign—cannot form the basis of a §1983 action premised on the School Defendants' constructive discharge of him in violation of his due process rights. While Mr. Albano may have a claim against Union Representatives for a breach of the duty of fair representation under Ohio Rev. Code § 4117, due to any alleged failure to advise him of his rights and options, the State Employment Relations Board has exclusive jurisdiction of such claims. *Murray*, 2012 WL 4475718, at *10 (finding union's decision not to arbitrate plaintiff's grievance did not amount to a due process violation, but, rather may amount to a breach of the duty of fair representation under O.R.C. § 4117.11(B)(6), over which SERB has exclusive jurisdiction).

Thus, since the face of the Complaint shows that Mr. Albano was afforded two months to deliberate over his decision, he acted based on the advice of counsel, he at least agreed to his date of resignation, and he was not put under any improper duress, coercion, or misinformation to procure his resignation, this Court concludes his resignation was voluntary. Accordingly, this Court hereby dismisses his §1983 claim based on constructive discharge in violation of due process.

### B. State Claims—Decline to Exercise Supplemental Jurisdiction

When a federal court dismisses claims over which it had original jurisdiction, it may decline to exercise supplemental jurisdiction over the remaining claims. *See* 28 U.S.C. § 1367(c)(3)."Whether a district court should decide a pendent state-law claim after dismissing all claims over which it had original jurisdiction depends on a balancing of factors that include judicial economy, convenience, fairness, and comity."*Ferrette v. Cuyahoga Cnty. Bd. of Elections,* 105 F. App'x 722, 727 (6th Cir.2004) (citations and internal quotations omitted). Dismissal of claims providing original jurisdiction at an early stage weighs strongly in favor of dismissing the remaining state-law claims. *Musson Theatrical Corp. v. Fed. Express Corp.,* 89 F.3d 1244, 1254–55 (6th Cir.1996) ("When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed."); *Gaff v. Fed. Deposit Ins. Corp.,* 814 F.2d 311, 319 (6th Cir.1987) ("It is generally recognized that where, as in this case, federal issues are dismissed before trial, district courts should decline to exercise pendent jurisdiction over state law claims."); *Aschinger v. Columbus Showcase Co.,* 934 F.2d 1402, 1412 (6th Cir.1991) (only "overwhelming interests in judicial economy may allow a district court to properly exercise its discretion and decide a pendent state claim even if the federal claim has been dismissed before trial.").

This Court has dismissed Plaintiff's only claim over which it had original jurisdiction—Count IV, Deprivation of Due Process Rights under 42 U.S.C. § 1983. Plaintiff has ten remaining state-law claims, concerning both state statutes and civil torts: Constructive Discharge (Count I); Fraud in the Inducement (Count II); Age Discrimination-O.R.C. § 4112.02(Count III); Whistleblower Statute Violations—O.R.C. § 4113.52 (Count V); Civil Conspiracy (Count VI);

Respondeat Superior (Count VII); Negligent Training, Supervision, and Retention (Count VIII); Intentional Infliction of Emotional Distress (Count IX); Legal Malpractice (Count X); and, Punitive Damages (Count XI).

At this early stage in the proceedings, well before discovery, summary judgment or trial, this Court finds no overwhelming interest in judicial economy sufficient to overcome the presumption that a district court should decline jurisdiction over state law claims after dismissing all federal claims. *Aschinger v. Columbus Showcase Co.*, 934 F.2d 1402, 1413 (6th Cir. 1991) (finding that since a prerequisite for the existence of pendent jurisdiction is that the federal claims must have substance sufficient to confer subject matter jurisdiction in federal court, when a case is dismissed for failure to state a federal claim, the federal claims do not have substance sufficient to confer subject matter jurisdiction in federal court, thus weighing against maintaining jurisdiction over any remaining pendent state law claims). Thus, this Court declines to exercise jurisdiction over the remaining state law claims.

## IV.   CONCLUSION

For the foregoing reasons, the School Defendants', Union Defendants', and Attorney Defendants' Motions for Judgment on the Pleadings are hereby **GRANTED**. (Docs. 21, 22, and 27). Count IV is hereby **DISMISSED**, and the remaining state law claims are **REMANDED** to the Franklin County Court of Common Pleas.

**IT IS SO ORDERED.**

   **s/Algenon L. Marbley**
**ALGENON L. MARBLEY**
**United States District Judge**

**DATED: March 17, 2015**